# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| LINDA KAY ARNOLD, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:06CV00109 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | By: James P. Jones |
| COMMISSIONER OF SOCIAL ) | Chief United States District Judge |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

*Vernon M. Williams, Wolfe, Williams & Rutherford, Norton, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Linda Kay Allen filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383(f) (West 2003 & Supp. 2007). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff applied for DIB and SSI on April 15, 2004, alleging disability beginning December 11, 2003, due to lower back pain, pelvic pain, arthritis in the knees and ankles, and pain in the shoulders, neck, elbows, and wrist. (R. at 45-48, 67-68, 163-65.) The claim was denied on September 10, 2004 (R. at 32-36), and upon reconsideration on October 26, 2004 (R. at 38-40).

On November 15, 2004, the plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (R. at 41.) A hearing was held on September 28, 2005. (R. at 176-91.) The plaintiff, who was present and represented by counsel, testified at the hearing. (*Id.*) By decision dated March 6, 2006, the ALJ denied the plaintiff's claim for DIB and SSI. (R. at 13-24.)

The plaintiff then filed a request for review received by the Social Security Administration's Appeals Council on March 22, 2006. (R. at 11-12.) By a notice

dated October 4, 2006, the Appeals Council denied the plaintiff's request for review (R. at 6-8.) Thus, the ALJ's opinion constitutes the final decision of the Commissioner. The plaintiff filed a complaint with this court on November 7, 2006, objecting to the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was forty-five years old at the time of the ALJ's decision, making her a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c) (2007). She has a high school education and an associate degree and last worked as a cashier and deli worker in 2003. (R. at 71, 105, 186.) She has past work experience as a convenience store manager and as a waitress. (R. at 105, 186.)

The plaintiff began treatment with Laramie C. Triplett, M.D., on July 18, 2003. (R. at 118.) Dr. Triplett assigned the following diagnoses: inadequately controlled hypertension, degenerative joint disease, morbid obesity, and tobacco abuse. (*Id*.) The plaintiff returned on August 22, 2003, and Dr. Triplett stated that the plaintiff's hypertension was now adequately controlled. (R. at 116.) Three months later, on

-3-

November 21, 2003, the plaintiff was re-evaluated, and Dr. Triplett reiterated his diagnoses of hypertension, obesity, and chronic pain and prescribed several medications. (R. at 115.)  When the plaintiff returned on February 17, 2004, for a blood pressure check, she stated that she was tolerating her medications well. (R. at 114.)  The plaintiff was not seen again by Dr. Triplett until May 14, 2004, when she sought treatment for allergy-type symptoms, a refill of her pain medications, and a follow-up on her blood pressure. (R. at 113.)  Dr. Triplett determined that the plaintiff's hypertension was once again inadequately controlled and he diagnosed her with allergies. (*Id*.)

On August 19, 2004, the plaintiff had a consultative examination with Robert Saunders, M.D., for her lower back pain. (R. at 124-28.)  During the evaluation, the plaintiff also complained of pain in her left knee and ankle pain and stiffness and she stated that she had been morbidly obese since childhood. (R. at 124-25.)  Dr. Saunders, however, found no restrictions in motor strength in the upper extremities, biceps, triceps, quadriceps, or hamstrings. (R. at 127.)  The examination also revealed no deficits in pinprick or positional touch or in loss of muscle bulk or tone. (*Id*. )  A straight leg-raising test also yielded negative results. (*Id*.)

Dr. Saunders diagnosed the plaintiff with lower back pain, left knee pain, and "status post ankle repair on the left." (*Id*.)  He opined that the plaintiff had no sitting

-4-

restrictions and did not need assistive devices for short or long distances or uneven terrain, but could only stand or walk for less than two hours total in an eight-hour day. (R. at 128.) He further stated, "The significant morbid obesity of this claimant, in addition to her parasternal tenderness[,] would indicate frequent breaks when required." (*Id*.) Due to her significant deconditioning, Dr. Saunders suggested that the plaintiff could only lift and carry ten pounds frequently and twenty pounds occasionally. (*Id*.) His report also indicated that, due to her morbid obesity, she could not bend, stoop, or crouch to a significant degree and had a decreased ability to dorsiflex, but that she had no manipulative limitations on her ability to handle, feel, and grasp both fingers. (*Id*.)

The same day X rays were taken of the plaintiff's lumbar spine and left knee. (R. at 129.) The lumbar spine X ray yielded normal results. (*Id*.) The reviewing physician noted mild degenerative changes in the medial compartment of the left knee, but stated that the left knee was otherwise normal. (*Id.*)

State agency physician, Richard M. Surrusco, M.D., reviewed the plaintiff's files and completed a physical residual functional capacity assessment, dated September 8, 2004. (R. at 130-36.) Dr. Surrusco stated that the plaintiff maintained

the capacity to perform light work[1] and that her only significant restriction was in climbing ladders, ropes, or scaffolds. (R. at 131-32.) In assessing the plaintiff's limitations, Dr. Surrusco considered Dr. Saunders' report, found it partially consistent with his own determination, and gave it "appropriate weight." (R. at 135.) Dr. Surrusco's assessment was reviewed and affirmed on October 22, 2004, by Dr. Michael J. Hartman, M.D., another state agency physician. (R. at 134.)

On October 1, 2004, the plaintiff returned to Dr. Triplett complaining of leg cramps. (R. at 111.) Dr. Triplett opined that while the etiology of the cramps was uncertain they were possibly obesity-related. (*Id*.) He continued the plaintiff on her medications for hypertension. (*Id*.) As to the plaintiff's morbid obesity, Dr. Triplett noted that he had encouraged the plaintiff to make diet and exercise changes to promote weight loss. (*Id*.) His treatment notes also indicate that he had diagnosed her with a ganglion cyst in the wrist and had offered an orthopedic consult that she had declined. (*Id*.)

Dr. Triplett completed a Medical Assessment of Ability to do Work-Related Activities (Physical) on January 19, 2005. (R. at 122-23.) When asked in this

---

[1] Light work is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal or walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2007).

-6-

questionnaire whether the plaintiff's ability to lift, carry, stand, walk, and sit were affected by her morbid obesity and arthritis in the knees, Dr. Triplett replied that they were affected but that the extent of her restrictions would "be best answered by functional capacity evaluation." (R. at 122.) Dr. Triplett also stated that the plaintiff could never climb, kneel, crouch, balance, or crawl, but could occasionally stoop. (R. at 123.) According to Dr. Triplett, the only physical function affected by her impairment was her ability to push and pull. (*Id.*) Dr. Triplett identified only a few environmental restrictions. (*Id.*)

Dr. Triplett examined the plaintiff again on April 7, 2005. (R. at 145.) The plaintiff complained of left-sided chest tightness and feeling shaky and stated that she thought it was related to anxiety. (*Id.*) Dr. Triplett opined in his notes that the chest discomfort was probably not cardiac-related. (*Id.*) When the plaintiff returned on July 5, 2005, she did not mention chest tightness. (R. at 144.) Dr. Triplett reported the plaintiff's conditions as adequately controlled hypertension, obesity, and chronic pain due to probable degenerative joint disease. (*Id.*)

However, when Dr. Triplett completed another Medical Assessment of Ability to do Work-Related Activities (Physical) only a few weeks later on July 20, 2005, he reported that the plaintiff suffered from diabetic neuropathy and edema in addition to obesity. (R. at 148-49.) He once again indicated that the plaintiff's impairments

-7-

affected her ability to lift, carry, stand, walk, and sit, but did not indicate the extent of her restrictions. (R. at 148.) He did find that her ability to see was now affected and that she had more environmental restrictions. (R. at 149.)

Along with this physical assessment, Dr. Triplett also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on July 20, 2005. (R. at 150-51.) In this assessment, Dr. Triplett responded that the plaintiff had a "fair" ability to deal with work stresses, function independently, maintain attention and concentration, maintain personal appearance, and behave in an emotionally stable manner. For all other questions regarding the plaintiff's abilities, Dr. Triplett only answered "unknown." (*Id.*)

On November 19, 2005, the plaintiff had a psychological consultative examination with William E. Stanley, M.Ed., SPE, which was reviewed and signed by clinical psychologist Donald Hiers, Ph.D. (R. at 155-59.) Stanley stated in his report that the plaintiff was cooperative, appeared socially confident and comfortable, and generally understood instructions. (R. at 155.) The plaintiff was also "appropriately persistent on assessment tasks" and Stanley judged her to be emotionally stable with average intellectual functioning. (R. at 156-57.) According to this report, the plaintiff reported performing several daily activities, including: regular housework with rest periods and assistance from her son, running errands,

-8-

Case 1:06-cv-00109-JPJ-PMS   Document 14   Filed 10/22/07   Page 8 of 16   Pageid#: 58

helping her son with his homework, preparing meals, watching television or reading, and sometimes playing a board game. (R. at 157.)

Stanley diagnosed the plaintiff with mild dysthymic disorder and mild generalized anxiety disorder. (R. at 158.) He assigned her a global functioning ("GAF") score of 65.[2] (*Id.*)

Stanley also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental), which was signed by Dr. Hiers. (R. at 160-62.) In this assessment, Stanley opined that the plaintiff was not limited in her ability to perform the majority of mental work-related activities, and had only a slight limitation in other areas. (*Id.*)

A vocational expert testified at this hearing. When asked by the ALJ to classify the plaintiff's past work, the vocational expert opined that she had worked at light and medium exertional levels in skilled and semi-skilled work. (R. at 187.) The ALJ also asked the vocational expert to consider whether jobs existed in significant numbers for an individual the same age as the plaintiff with her same education, background,

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score below 50. Scores between 61 and 70 indicate only mild symptoms or mild difficulty in social, occupational, or school functioning. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

and who was restricted to light work activity. The ALJ described light work activity as lifting up to twenty pounds occasionally and ten pounds frequently. (*Id.*) The ALJ also asked the vocational expert to assume that this person could only stand or walk up to two hours in a eight-hour day and could not perform jobs that require her to bend, stoop, crouch, or crawl. (*Id.*) In response, the vocational expert testified that the plaintiff could perform sedentary work as a cashier, information clerk, administrative support assistant, interviewer, or hand packager, or by answering telephones. (R. at 187-88.) The vocational expert estimated that 2,500 of these types of jobs existed regionally and that 346,000 existed nationwide. (R. at 188.)

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

-10-

The Commissioner applies a five-step sequential evaluation process in assessing DIB and SSI claims. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4) (2007). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision, and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences in the evidence. It is not the role of this court to substitute

its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In reaching his decision that the plaintiff was not disabled within the meaning of the Act, the ALJ afforded Dr. Triplett's opinions very little weight. (R. at 22.) The plaintiff contends that the ALJ erred in his decision because he discredited the opinions of both Dr. Triplett and Dr. Saunders. (Pl.'s Br. Supp. Mot. Summ. J. 6-10.) Therefore, the first issue in this appeal is whether the ALJ properly weighed the opinions of these health professionals.

Generally the opinions of treating sources are given more weight in reaching a disability determination. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). But a treating source's opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." *Id*. The opinion must also be about the nature and severity of the impairment. *Id*.

The regulations outline several factors that an ALJ is to consider when weighing a medical opinion. Among those factors are: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of

examination; (3) the nature and extent of the treatment relationship; (4) the degree to which evidence supports the opinion; (5) the consistency of the record as a whole; (6) the specialization of the physician; and (7) any other factors that tend to support or contradict the opinion. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Because Dr. Triplett's opinions are not supported by the objective medical evidence in the record, or even his own treatment notes, the ALJ properly afforded them very little weight. (R. at 22.) The ALJ also discredited Dr. Triplett's opinions because he failed to specify the claimant's work-related limitations. (*Id*.) For example, in the Medical Assessment of Ability to do Work-Related Activities (Mental), dated July 20, 2005, Dr. Triplett merely answered "unknown" for several questions. (R. at 150-51.) In the Medical Assessment of Ability to do Work-Related Activities (Physical) completed the same day, Dr. Triplett responded that the plaintiff's impairments affected her ability to lift, carry, stand, walk, and sit, but did not indicate the extent of her restrictions. (R. at 148.)

Furthermore, in the July 2005 physical assessment, Dr. Triplett indicated that the plaintiff suffered from diabetic neuropathy (R. at 148) but, as the defendant correctly observed, the record is devoid of evidence suggesting that the plaintiff has ever been treated for diabetes. Additionally, Dr. Triplett stated in this physical

-13-

assessment that the plaintiff suffered from edema (R. at 148), but in his treatment notes from November 2003, February 2004, and April 2005, he specifically stated that she did not suffer from edema. (R. at 115, 114, 145.)

The ALJ also found Dr. Triplett's opinions inconsistent with the plaintiff's own admissions. In particular, she admitted to Dr. Triplett at a July 5, 2005, appointment that with pain medication she could move about and accomplish her usual daily activities. (R. at 22, 144.)

And while the plaintiff contends that the ALJ also did not afford proper weight to Dr. Saunders' opinions, the ALJ actually states in his opinion that he concurred with Dr. Saunders' opinions. (R. at 22.) The plaintiff also misconstrues Dr. Saunders' findings. For example, she argues that Dr. Saunders found that she is unable to dorsiflex. (Pl.'s Br. Supp. Mot. Summ. J. 8.) In fact, Dr. Saunders' report stated that she has a "decreased ability," not a complete inability. (R. at 128.) Furthermore, in his notes Dr. Saunders indicates that several parts of her body had normal dorsiflexion, including her wrists. (R. at 127.)

Additionally, the plaintiff suggests that Dr. Saunders found that she would need to take frequent breaks, regardless of whether she is sitting or standing in her job. (Pl.'s Br. Supp. Mot. Summ. J. 8.) Dr. Saunders actually stated in his report that

the plaintiff's ability to sit was not restricted, and only when she was standing or walking would she need to take frequent breaks. (R. at 128) ("The number of hours this claimant could be expected to stand or walk in an eight-hour day is limited to less than two hours in total. The significant morbid obesity of this claimant, in addition to her parasternal tenderness[,] would indicate frequent breaks when required.") In short, it appears that the ALJ accepted Dr. Saunders' opinions to the extent that they were consistent with the state agency physicians' findings that the plaintiff could perform a limited range of light work. (R. at 22.) Because the record supports the ALJ's decision to give significant but not complete weight to Dr. Saunders' opinions, I find no error.

Furthermore, the ALJ also considered the plaintiff's self-reported activities of daily living in determining that she was not disabled within the meaning of the Act. (R. at 21.) In her daily activities questionnaire, the plaintiff stated that she got her eleven-year-old son ready for school, watched television, did housework including laundry, got groceries, and ran other errands. (R. at 88-90.) She also indicated that she picked up her son at school, cooked dinner, washed dishes, visited with her family, read, and worked puzzles. (*Id*.) When evaluated by Mr. Stanley, she stated that she prepared supper, watched television or read, played a board game, helped her

-15-

Case 1:06-cv-00109-JPJ-PMS   Document 14   Filed 10/22/07   Page 15 of 16   Pageid#: 65

son with his homework, performed her own housework with rest periods, and ran errands. (R. at 157.)

In short, I find that the ALJ properly weighed the treating and consulting physicians' opinions and that the ALJ's residual functional capacity assessment is supported by substantial evidence.

IV

For the foregoing reasons, the plaintiff's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: October 22, 2007

/s/   JAMES P. JONES
Chief United States District Judge